# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00599-CV

---

**Appellant, Anne Coyle // Cross-Appellant, Stephen Casey**

**v.**

**Appellees, Chad Walker and Alisha Flood // Cross-Appellee, Anne Coyle**

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY
### NO. 17-0727-CC2, THE HONORABLE LAURA B. BARKER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Anne Coyle appeals from the trial court's final judgment in favor of Chad Walker and Alisha Flood[1] following a bench trial. In four issues, Coyle challenges the trial court's jurisdiction and authority to make determinations regarding two prior money judgments in favor of Coyle against Walker and Flood, the award of attorney's fees against Coyle, and the trial court's finding that Flood had satisfied her obligations under the prior judgments. Coyle also raises three conditional issues challenging the legal and factual sufficiency of the evidence to support the trial court's findings.

On cross-appeal, Stephen Casey challenges the portion of the final judgment that incorporated the trial court's amended sanctions order against him. The trial court ordered Casey, who represented Walker and Flood in the underlying suit until March 2021, to pay Coyle

---

[1] Alisha Flood is also referred to as Alisha Walker in the record. Consistent with her briefing to this Court, we refer to her as Flood.

$8,521.50 as a sanction based on "material misrepresentations" that he made to the trial court during the initial hearing on a vexatious litigant motion that he filed against Coyle.

For the following reasons, we affirm the final judgment.

## BACKGROUND

Coyle and Walker are siblings, and Walker and Flood were married but divorced in 2015. In 2012, Coyle sued Walker and Flood in two separate suits: (i) Cause No. 12-0944-CC4, in Williamson County Court at Law No. 4; and (ii) Cause No. 12-1007-C26, in the 26th District Court of Williamson County. On June 5, 2015, the parties signed a mediated settlement agreement (MSA), "agree[ing] to settle all claims and controversies between them, asserted or assertable, in these cases Cause No. 12-0944-CC4 and Cause No. 12-1007-C26." The styles of the two suits are displayed at the top of the MSA's first page, and the MSA provides that Walker and Flood agree "to a $2000 dollar judgment" against them to be paid in monthly payments by each of them of $27.70 over thirty-six months:

> Chad Walker and Alisha [Flood] agree[] to a $2000 dollar judgment against them they are jointly and severally liable to be paid out in a period of thirty six months with a payment of $55.56 each shall pay $27.70 with the first payments are due and payable on July 1, 2015 with like payment due on the first of each month thereafter until paid in full.[2]

The parties also agreed: (i) "Each party releases the other from all claims, demands, causes of action each may have against the other, save and except those covenants, duties, and obligations set forth in this agreement"; and (ii) "The terms of this agreement will be incorporated in Court Orders. The attorney for Chad Walker shall prepare the documents."

---

[2] The parties further agreed to permanent injunctive relief, but that relief is not at issue in this appeal.

On September 17, 2015, the district court in Cause No. 12-1007-C26 signed an order titled "MSA and Final Order." The MSA was attached to the order and its "specific terms of which are incorporated by reference (Exhibit A) and set out generally below." The MSA's provisions were recited in the order, including the provision in which Walker and Flood agreed to "a $2,000 dollar judgment against them" with monthly payments by each of them of $27.70 over thirty-six months beginning on July 1, 2015. In March 2016, Walker delivered a certified check to Coyle in the amount of $1,055.50.[3]

On October 27, 2016, the county court at law in Cause No. 12-0944-CC4 signed an order titled "MSA and Final Order." Consistent with the district court's order in Cause No. 12-1007-C26, the MSA was attached, its terms were incorporated by reference, and its provisions recited including Walker and Flood's agreement to "a $2000 judgment" with monthly payments by each of them of $27.70 over thirty-six months beginning on July 1, 2015.

On November 17, 2016, Coyle obtained an abstract of judgment in Cause No. 12-0944-CC4, stating that the amount of the judgment of $2,000 was still due and that the judgment was not entitled to any credits. On the same day, Flood sent a certified check to Coyle in the amount of $1,000 by certified mail. On the certified check, she handwrote "Settlement in Full Case #12-0944-CC4 and 12-1007-C26."

In May 2017, Walker and Flood filed the underlying suit. They asserted a claim for damages under Section 12.002 of the Texas Civil Practice and Remedies Code on the ground that the abstract of judgment was a "false filing," and they sought declaratory relief and

---

[3] The record reflects that Coyle sued Walker and Flood in small claims court in two suits to enforce the MSA, that Walker delivered the certified check in the amount of $1,055.50 to Coyle shortly after those suits were filed, and that the small claims court entered take "nothing judgments" in both suits in November 2016. Walker's certified check in the memo line refers to one of the cause numbers in the small claims court.

3

attorney's fees. *See* Tex. Civ. Prac. & Rem. Code § 12.002 (addressing liability for filing fraudulent court record or lien). Coyle, acting pro se, filed an answer and counterclaim against Walker, Flood, and their attorney Casey. Walker and Flood then moved to have Coyle's counterclaims dismissed pursuant to Rule 91a of the Texas Rules of Civil Procedure, *see* Tex. R. Civ. P. 91a, and to have Coyle declared a vexatious litigant, *see* Tex. Civ. Prac. & Rem. Code § 11.051 (authorizing motion for order declaring plaintiff to be vexatious litigant). As to the latter motion, they argued that there was no reasonable probability that Coyle would prevail on her counterclaims and that she had commenced, prosecuted, or maintained at least five civil actions as a pro se party in the preceding seven years within the meaning of Section 11.054(1) of the Texas Civil Practice and Remedies Code. *See id.* § 11.054(1). Following a hearing in July 2017, the trial court signed an order declaring Coyle a vexatious litigant.

Coyle obtained counsel and filed an amended answer and an amended motion to reconsider the vexatious litigant motion and for sanctions. In her amended answer, she sought declaratory relief "that the two judgments identified above are both final judgments not subject to attack in this Court" and attorney's fees.[4] In her amended motion to reconsider and for sanctions, she argued that five of the seven suits identified by Walker and Flood in their motion could not be used as civil litigation filings for purposes of the vexatious litigant statute. Following a hearing in December 2017, the trial court signed an amended order reversing its prior ruling declaring Coyle a vexatious litigant in its entirety and an order sanctioning Casey in the amount of $8,521.80 pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 13. *See id.* §§ 10.001–.006; Tex. R. Civ. P. 13.

---

[4] Coyle also filed a notice of partial non-suit to clarify her pleadings, expressly withdrawing her claim that Walker and Flood violated Chapter 12 of the Texas Civil Practice and Remedies Code.

In December 2019, the trial court signed an amended sanctions order, which was incorporated into the final judgment to permit Casey to appeal before having to pay the sanctions.[5]  In this order, the trial court found that there was good cause for the sanctions, that Casey "made several material misrepresentations to the Court" during the hearing in July 2017, that he failed to apprise the Court of binding authority, that he refused to withdraw his motion to declare Coyle a vexatious litigant after Coyle retained counsel and forwarded him the amended motion to reconsider and for sanctions, and that the appropriate sanction was to award Coyle her reasonable and necessary attorney's fees incurred in bringing the amended motion to reconsider and for sanctions.  The misrepresentations of law that the trial court found that Casey had made were that a federal habeas petition, *praecipe* for a writ of summons under Pennsylvania law, and proceedings under Pennsylvania's Post Conviction Relief Act (PCRA) were civil actions for purposes of the vexatious litigant statute.  *See* Tex. Civ. Prac. & Rem. Code § 11.001(2) (defining "litigation" for purposes of chapter to mean "civil action commenced, maintained, or pending in any state or federal court").

In March 2021, the trial court granted Casey's motion to withdraw as counsel for Walker and Flood, and Walker and Flood each obtained separate counsel.  The parties proceeded to file motions for summary judgment, which were denied, except Coyle's motion for partial

---

[5] *See In re Casey*, 589 S.W.3d 850, 851, 854 (Tex. 2019) (declining to consider propriety of sanctions by mandamus but directing trial court "to modify the sanctions order to defer payment until final judgment is rendered, allowing Casey 'an opportunity to appeal before such sanctions must be paid'" (quoting *Braden v. Downey*, 811 S.W.2d 922, 929–30 (Tex. 1991))).

no-evidence summary judgment as to Walker and Flood's fraudulent document claim brought under Section 12.002 of the Texas Civil Practice and Remedies Code.[6]

The bench trial occurred in August 2023. The parties and Casey testified about the MSA, the final orders, and the certified checks that Coyle received from Walker and Flood. Coyle testified that the agreement was for Walker and Flood to pay $2,000 to settle each suit for a total of $4,000, but Walker and Flood testified that they agreed to pay $2,000 to settle both Cause No. 12-0944-CC4 and Cause No. 12-1007-C26. Casey similarly testified that the total amount that was to be paid under the terms of the MSA and the final orders was $2,000. He explained that it was the intent of the MSA to have orders in both suits because "both dockets would be open. So you would have to enter this agreement into both dockets because the Court has to have a resolution to close that case out."

The parties also testified about the certified checks sent from Walker and Flood to Coyle. It was undisputed that Coyle cashed the certified check from Walker, but Coyle testified that she was unable to cash the certified check from Flood. An email exchange was admitted as an exhibit in which Coyle advises Flood that "[t]he bank won't accept/cash your check because you added text" and provided the name of a person at the bank to contact. Flood testified that after she contacted the person identified in the email and he told her that he could not discuss the certified check with her, she replied to the email, requesting that Coyle return the cashier's check to her and that she would replace it with a new one "without the settlement in full comment on

---

[6] During trial, the trial court on the record explained that it did not have jurisdiction to order that the abstract of judgment that Coyle had filed be expunged. The trial judge stated, "I'm not a district court. County courts at law don't have jurisdiction to expunge those types of judgments."

6

the memo line," but that she "never heard any response" from Coyle and that Coyle did not return the certified check to her.

As to Walker's certified check, an email exchange between Casey and Coyle that occurred in May 2016 was admitted as an exhibit. Casey requested an address for Walker to send payment; Coyle and Casey communicated about the filing fee in small claims court; and after Walker had sent the cashier's check to Coyle and she was asked by Casey if Walker had paid his portion of the settlement and half of the filing fee, Coyle responded, "He paid his portion of the settlement and half of his suit's filing fee: 55."

The parties also presented evidence of their incurred attorney's fees. Walker had incurred $15,485, Flood had incurred $8,884.30, and Coyle had incurred over $109,000 in attorney's fees. In addition to the copies of the email exchanges, the exhibits included copies of the MSA and final orders in both cases, the certified checks from Walker and Flood to Coyle, and documentation to support the parties' incurred attorney's fees. In closing arguments, counsel for Walker and Flood asked the trial court to enter a declaratory judgment "that the final judgment is cumulative total $2,000, not $4,000" and that Walker and Flood "have satisfied those judgments."

In the final judgment, the trial court rendered judgment that:

- "In cause 12-0944-CC4 and 12-1007-C26, there are two valid and existing judgments, one in each case."

- "That those two valid and existing judgments memorialize a single mediated settlement agreement, signed by the parties on June 5, 2015."

- Those two judgments "required a total payment of $2,000, for which Chad Walker and Alisha Flood were jointly and severally liable."

7

- "Chad Walker paid $1,055.00 towards that $2,000 to Anne Coyle in certified funds, who accepted those funds."

- "Alisa Flood tendered $1,000 towards that judgment in certified funds drawn on the University Federal Credit Union in the form of a Cashier's Check, and Anne Coyle received the check and never returned that check to Alisha Flood."

- "As a matter of law, the debt described in the MSA and the two judgments has been SATISFIED IN FULL."

The trial court also awarded judgments against Coyle to Flood in the amount of $8,884.30 and to Walker in the amount of $15,485.00 for reasonable and necessary attorney's fees and incorporated its December 2019 amended sanctions order against Casey into the judgment. These cross-appeals followed.

**ANALYSIS**

**Coyle's Appeal**

*Trial Court's Subject-Matter Jurisdiction*

In her first issue, Coyle argues that the trial court lacked subject-matter jurisdiction to rule on a declaratory judgment regarding the September 2015 "MSA and Final Order" in cause number 12-1007-C26 and the October 2016 "MSA and Final Order" in cause number 12-0944-CC4 (collectively, the final orders). "Whether a court has subject matter jurisdiction is a question of law." *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502 (Tex. 2010) (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

Walker and Flood sought relief under the Uniform Declaratory Judgments Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011. The UDJA is "remedial; its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." *Id.* § 37.002(b).

8

Declaratory judgments generally are appropriate "if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). "To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interests and not merely a theoretical dispute." *Id.* (quoting *Bexar-Medina-Atascosa Cntys. Water Control & Improvement Dist. No. 1 v. Medina Lake Prot. Ass'n*, 640 S.W.2d 778, 779–80 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.)).

Sections 37.004 and 37.005 of the UDJA enumerate covered subjects for granting declaratory relief, but they "are not exclusive, as the statute itself clearly states":

> The enumerations in Sections 37.004 and 37.005 do not limit or restrict the exercise of the general powers conferred in this section in any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty.

*Id.* at 468 (quoting Tex. Civ. Prac. & Rem. Code § 37.003(c)). The courts' "general powers" under the UDJA provide "discretion to enter a declaratory judgment so long as it will serve a useful purpose or will terminate the controversy between the parties." *Id.*

However, "a declaratory judgment action may not be brought to interpret a prior judgment." *Lancashire v. Lancashire*, No. 05-16-00890-CV, 2017 Tex. App. LEXIS 6369, at *5 (Tex. App.—Dallas July 11, 2017, no pet.) (mem. op.) (citing *Dallas Cnty. Tax Collector v. Andolina*, 303 S.W.3d 926, 930 (Tex. App.—Dallas 2010, no pet.)); *see Rapid Settlements, Ltd. v. SSC Settlements, LLC*, 251 S.W.3d 129, 140 (Tex. App.—Tyler 2008, no pet.) ("Declaratory relief is not available for the interpretation of a prior judgment entered by that or any other court."). "The use of a declaratory judgment action to interpret a judgment is an

impermissible collateral attack on the previous judgment and fails to confer subject matter jurisdiction on the trial court." *See Lancashire*, 2017 Tex. App. LEXIS 6369, at *5 (citing *Texas Dep't of Ins., Div. of Workers' Comp. v. Insurance Co.*, 306 S.W.3d 897, 902 (Tex. App.—Austin 2010, no pet.), and *Martin v. Dosohs I, Ltd., Inc.*, 2 S.W.3d 350, 354 (Tex. App.—San Antonio 1999, pet. denied)).

Coyle argues that the trial court lacked jurisdiction because there is no justiciable controversy—the underlying controversy was resolved by the final orders—and the trial court's final judgment improperly interprets the final orders. Coyle relies on the finality of the final orders because they were not directly appealed, and Casey's approval as counsel for Walker and Flood of the October 2016 final order, which he signed "agreed as to form." The trial court's final judgment in this case, however, resolved the justiciable controversy between the parties that arose after the parties entered the MSA—whether Walker's and Flood's certified checks were legally and validly tendered to Coyle and "satisfied in full" the final orders memorializing the MSA. Walker and Flood did not seek to modify the final orders or to have them vacated or set aside but relied on them to support that their certified checks satisfied their obligations under those orders. *See Biopolymer Eng'g, Inc. v. ImmuDyne, Inc.*, 304 S.W.3d 429, 436 (Tex. App.—San Antonio 2009, no pet.) (concluding that party's request for declaratory relief was not seeking judicial interpretation of prior judgment or to attack or modify judgment but to have trial court "uphold its rights under the prior judgment"). Resolving the parties' disputes about the incorporated MSA in the final orders and Walker's and Flood's certified checks, the trial court declared that the debt owed under the two final orders was "a total payment of $2,000," that Walker paid $1,055.00 towards that $2,000, that Flood tendered $1,000 in the form of a cashier's check that Coyle received but did not return, and that the debt described in the MSA and the two

10

judgments had been satisfied in full. *See Beadle*, 907 S.W.2d at 468 (explaining that courts' "general powers" under the UDJA provide trial court with "discretion to enter a declaratory judgment so long as it will serve a useful purpose or will terminate the controversy between the parties"); *see also, e.g., id.* (stating that declaratory judgment action is "appropriate vehicle for the offset of two final judgments").

On this record, we conclude that the trial court had subject-matter jurisdiction and that its final judgment did not impermissibly interpret the final orders. *See Texas Dep't of Ins.*, 306 S.W.3d at 903 (holding that district court had jurisdiction over declaratory judgment action that relied on prior judgment "as the basis for [party's] claim" under statute and that action "[did] not seek to impermissibly 'interpret a prior judgment'"). We overrule Coyle's first issue.[7]

*Res Judicata and Collateral Estoppel*

In her second issue, Coyle argues that principles of res judicata and collateral estoppel prevented the court from revisiting the final orders.

"Res judicata bars the relitigation of claims that have been finally adjudicated or that arise out of the same subject matter and that could have been litigated in the prior action." *Emmert v. Wilmington Sav. Fund Soc'y*, No. 02-20-00012-CV, 2021 Tex. App. LEXIS 1387, at *5–6 (Tex. App.—Fort Worth Feb. 25, 2021, pet. denied) (mem. op.) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). The elements to establish that res judicata applies are: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the

---

[7] To the extent that Coyle raises new arguments in her reply brief that exceed the scope of the issues in her opening brief, they are waived, and we need not consider them. *See Hammer v. Hammer*, No. 03-18-00028-CV, 2018 Tex. App. LEXIS 7574, at *20, n. 11 (Tex. App.—Austin Sept. 18, 2018, pet. denied) (mem. op.) (stating that to extent appellant raised new arguments in reply brief, they were waived and not considered).

same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Id.* at *6. "Collateral estoppel precludes the relitigation of issues resolved in a prior suit." *Id.* (citing *Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 628 (Tex. 1992)). The elements to establish collateral estoppel are: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Id.* (citing *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994)).

Coyle argues that "[t]he only way Walker and Flood's claims could have succeeded was if one of the two judgments was void" and that if Walker and Flood had an issue with the validity of one of the final orders entered by the prior courts, they should have complained to at least one of those courts, should not have had their attorney approve the form of the later judgment, or should have filed a direct appeal from one of those final orders. *See Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) ("When time for direct attack by appeal has elapsed, a bill of review in the court rendering the initial judgment is the exclusive remedy to attack the judgment." (citing *Middleton v. Murff*, 689 S.W.2d 212 (Tex. 1985))).

But Walker and Flood's subsequent suit did not seek to relitigate the subject matter of the claims that were resolved in the suits underlying the final orders or to raise issues or other claims that arose out of the subject matter and could have been litigated in those suits; rather, they sought declaratory relief that they had satisfied their obligations as agreed by the parties in the MSA to settle both suits. *See Maraio-Wilhoit v. Wilhoit*, No. 11-18-00312-CV, 2021 Tex. App. LEXIS 888, at *6–7 (Tex. App.—Eastland, Feb. 4, 2021, no pet.) (mem. op.) (explaining that because mediated settlement agreement is contract, "principles of contract

12

construction govern its interpretation" and that courts interpret contract's language according to its "plain, ordinary, and generally accepted meaning" (quoting *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 764 (Tex. 2018))); *see also* Tex. Civ. Prac. & Rem. Code § 154.071(a)–(b) (explaining that written settlement agreement disposing of dispute between parties "is enforceable in the same manner as any other written contract" and that "court in its discretion may incorporate the terms of the agreement in the court's final decree disposing of the case"). Further, the trial court's final judgment does not revisit the subject matter of the claims that were raised in the prior suits but makes declarations concerning the parties' conduct after they entered the MSA. In this context, we conclude that principles of res judicata and collateral estoppel did not prevent the trial court from making the declarations that it did. *See Emmert*, 2021 Tex. App. LEXIS 1387, at *5–6. We overrule Coyle's second issue.[8]

*Attorney's Fees*

In her third issue, Coyle argues that if this Court reverses the trial court's final judgment, we should reverse and remand the attorney's fees portion of the judgment for reconsideration of what is equitable and just. *See* Tex. Civ. Prac. & Rem. Code § 37.009 (authorizing court to award costs and attorney's fees "as are equitable and just"); *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 455 (Tex. 2015) (stating that trial court has discretion to award attorney's fees under UDJA and that when an appellate court reverses declaratory

---

[8] Coyle argues that Walker and Flood have waived arguments as to her issues two, three, and six due to inadequate briefing, but we decline to conclude that they have done so. *See Tijerina v. Wysong*, No. 14-15-00188-CV, 2017 Tex. App. LEXIS 1015, at *3–4 (Tex. App.— Houston [14th Dist.] Feb. 7, 2017, no pet.) (mem. op.) (observing that appellees have no obligation to file brief or "even raise the argument for this court to consider it" and declining to hold that appellees waived argument due to inadequate briefing).

13

judgment, it may reverse attorney's fee award).  Because this issue is dependent on this Court's reversal of the trial court's judgment and we are affirming it, we overrule Coyle's third issue.

*Flood's Cashier's Check*

In her fourth issue, Coyle argues that the trial court erred in applying funds from Flood's cashier check to determine that the final orders were satisfied in full because Coyle did not receive the funds from the check.  She argues that Flood altered the cashier's check to make it "'conditional' which means the payment was not tendered as alleged," that it was "undisputed" that she "was unable to cash the check," and that "the bank considered the cashier's check to no longer be certified."  She, however, does not cite evidence in the record to support that the bank considered the check to no longer be certified,[9] and the trial court as the factfinder could have discounted the evidence that Coyle was unable to cash the check.  *See Austin Capital Collision,*

---

[9] The trial court sustained objections of hearsay to questions asked of Coyle about why she was unable to cash Flood's certified check.  For example, the trial court sustained a hearsay objection to the following question and answer and struck the answer from the record:

Q.  And why were you not able to cash the check?
A.  I was told by the bank manager that it was defaced, so they could no longer—treat it as a certified—.

To the extent that Coyle relies on Section 3.407 of the Texas Business and Commerce Code to support that the bank no longer considered Flood's check to be certified because of Flood's notation on the memo line, we conclude that section, which concerns unauthorized alterations to negotiable instruments, is not applicable and does not support Coyle's contention.  *See* Tex. Bus. & Com. Code § 3.407; *Cunningham v. Anglin,* No. 05-13-01166-CV, 2015 Tex. App. LEXIS 939, at *10–13 (Tex. App.—Dallas Jan. 30, 2015, pet. denied) (mem. op.) (discussing Section 3.407, collecting cases addressing it, and concluding that change made by payee to notation on memo line of check was not fraudulent material alteration).  Further, Coyle's cited case is not analogous.  *See Republic Nat'l Bank v. Stetson,* 382 S.W.2d 775, 782 (Tex. App.—Beaumont 1964, no pet.) (op. on reh'g) (concluding that "blank instrument" was void because plaintiffs' agent had represented to defendants that it was tenancy agreement when it was deed and agent materially altered it after it was signed by defendants without their "authority or consent").  In contrast with the "blank instrument" in that case, Coyle did not sign the certified check, and Flood was the payor of the certified check.

14

*LLC v. Pampalone*, No. 03-15-00447-CV, 2016 Tex. App. LEXIS 12957, at *9–10 (Tex. App.—Austin Dec. 8, 2016, no pet.) (mem. op.) (explaining that when trial court is acting as factfinder, it "is the sole judge of the credibility of the witnesses and the weight to be given their testimony," and that, in appeal from bench trial, appellate court defers to "trial court's first-hand assessment of [witness's] credibility and demeanor"). Flood testified only to what Coyle told her about the certified check, there was no testimony from anyone from a bank, and the evidence was undisputed that Coyle did not return the certified check to Flood.[10] *See* Tex. Bus. & Com. Code § 3.310(a) (providing that if certified check "is taken for an obligation, the obligation is discharged to the same extent discharge would result if an amount of money equal to the amount of the instrument were taken in payment of the obligation").

As support for her contention that the certified check was not a "valid tender," Coyle relies on *Note Investment Group, Inc. v. Associates First Capital Corp.*, 476 S.W.3d 463 (Tex. App.—Beaumont 2015, no pet.), but that case is inapposite. In that case, the tendered check, which was not a certified check, was returned with a letter stating that the tender of funds was rejected. *Id.* at 473. And the questions before the Beaumont Court of Appeals concerned whether the tender of the check constituted a "valid tender" to preclude the recovery of attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code and interest

---

[10] Flood testified that she sent the certified check to Coyle by certified mail, that she received the receipt showing Coyle had received it, and that she received an email regarding the certified check. She testified that in the email, Coyle stated that "her bank would not cash it because of the comment in the memo" and gave her "the name of the bank manager to call." Flood called the bank manager whom Coyle referred her to and "he stated to me that he could not discuss it with me." Flood then replied to Coyle's email, "if you would like to return the cashier's check, I would be more than happy to issue another cashier's check to replace the one that had the settlement in full on the memo, and I would send her a new one with nothing on it." Flood "never heard a response" and did not get the check back. Flood's attorney also represented to the trial court that because Coyle did not return the certified check to Flood, Flood could not get the funds back that were taken out of her account for the cashier's check.

15

accruing after the date of the tender. *Id.* at 483–84 (explaining that "proper tender of just amount owed is a defense to a claim for attorney's fees under Chapter 38" and "to a claim for interest on the obligation accruing after the tender" and that defendant is not liable for attorney's fees and subsequent interest if defendant tenders payment for full amount owed, and plaintiff refuses to accept it and proceeds to trial); *see* Tex. Civ. Prac. & Rem. Code § 38.001 (permitting party to recover attorney's fees in addition to amount of valid contract claim). In contrast, the evidence here was undisputed that Coyle received the certified check from Flood, that Flood asked Coyle to return the check to her so that she could replace it, and that Coyle did not return the check, and the issue before the trial court was whether the unreturned certified check should be applied against the $2,000 obligation in the final orders and the MSA.

Coyle also relies on *Crisp Analytical Lab, L.L.C. v. Jakalam Properties. Ltd.*, 422 S.W.3d 85 (Tex. App.—Dallas 2014, pet. denied), but the check in that case was not a certified check, it was tendered with a release form, and the evidence was that the check was never cashed, *id.* at 88–89. In contrast, the tender of a certified check legally discharges outstanding debt in the check's amount. *See* Tex. Bus. & Com. Code § 3.310(a)–(b) (addressing effect of certified and "uncertified" checks on obligations for which they are taken); *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 655 n.5 (Tex. 1990) (explaining that "cashier's check is a bill of exchange drawn by a bank on itself and accepted in advance by the act of its issuance; therefore, it is not subject to countermand by its purchaser or the issuing bank" and that "it is not subject to a stop payment order after it has been issued" (citing *Wertz v. Richardson Heights Bank & Tr.*, 495 S.W.2d 572, 574 (Tex. 1973) and Tex. Bus. & Com. Code § 4.303)).

For these reasons, we conclude that the trial court did not err in applying the amount of Flood's cashier check to the $2,000 that was owed under the MSA to determine that the final orders were satisfied in full. We overrule Coyle's fourth issue.

*Conditional Issues*

In three conditional issues, Coyle challenges the legal and factually sufficiency of the evidence to support the trial court's findings that Flood's cashier's check of $1,000 should be credited toward the balance owed, that Walker's payment of $1,055.50 should be completely applied to one of the judgments, and that Walker and Flood have fully satisfied their obligations to Coyle.

"In an appeal from a bench trial, the trial court's findings have the same weight as a jury verdict." *Kerr v. Lambert*, No. 03-19-00359-CV, 2020 Tex. App. LEXIS 8387, *5 (Tex. App.—Austin Oct. 23, 2020, no pet.) (mem. op.) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). When the appellate record includes a reporter's record, as is the case here, "findings of fact are not conclusive and are binding only if supported by the evidence." *Id.* (citing *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.)). "We review a trial court's findings of fact under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question." *Id.* (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)); *see City of Keller v. Wilson*, 168 S.W.3d 802, 810, 827–28 (Tex. 2005) (describing legal-sufficiency review of evidence); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (describing factual-sufficiency review of evidence). "In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses."

17

*Kerr*, 2020 Tex. LEXIS 8387, at *6 (citing *Southwestern Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied)).

In her fifth issue, Coyle argues that the evidence was legally and factually insufficient to hold that Flood's cashier's check should be credited towards the balance owed because Coyle testified that she was unable to cash the check and, thus, Flood's obligation to her remains unsatisfied. But as stated above, the trial court, as the factfinder, could have discounted Coyle's testimony and credited the undisputed evidence that Coyle received the cashier's check but did not return it to Flood. *See* Tex. Bus. & Com. Code § 3.310(a) (addressing effect of certified check on obligation for which it is taken); *Guaranty Fed. Sav. Bank*, 793 S.W.2d at 655 n.5 (explaining that cashier's check "is not subject to countermand by its purchaser or the issuing bank"). Viewing the evidence under the applicable standards of review, we conclude that the evidence was legally and factually sufficient to support the trial court's finding that the amount of Flood's cashier check should be applied to the amount owed under the final orders. *See City of Keller*, 168 S.W.3d at 810, 827–28; *Cain*, 709 S.W.2d at 176. We overrule Coyle's fifth issue.

In her sixth issue, Coyle argues that the evidence was legally and factually insufficient to find that Walker's payment of $1,055.50 should be completely applied to one of the final orders because the evidence, including Walker's testimony, "established that only $1,000 was paid toward his outstanding judgment with the remaining amount going to another obligation"—"a small claims court filing fee that he agreed to pay." But even if evidence supported a finding of that being the case, there was other evidence that Walker's payment "represented, in [Coyle's] words, . . . his portion of the settlement." Crediting this evidence, whether $55.50 should have been applied toward the amount owed in the final orders does not impact the disposition of this appeal. The outstanding amount owed under the plain language of

the final orders and the incorporated MSA was $2,000, and the evidence established that Coyle received Flood's cashier's check of $1,000 in addition to Walker's cashier's check of $1,055.50. Thus, we conclude that the evidence was legally and factually sufficient that the amount owed of $2,000 had been satisfied in full. *See City of Keller*, 168 S.W.3d at 810, 827–28; *Cain*, 709 S.W.2d at 176. On this basis, we overrule Coyle's sixth issue.

In her seventh issue, Coyle argues that that the evidence was legally and factually insufficient to find that Walker and Flood had satisfied their obligations to Coyle because the trial court refused to account for postjudgment interest on the prior final orders. *See* Tex. Fin. Code §§ 304.001 ("A money judgment of a court in this state must specify the postjudgment interest rate applicable to that judgment."), .005 (stating general rule for accrual of postjudgment interest on money judgment). As support for her contention that postjudgment interest was owed, Coyle cites *RAJ Partners, Ltd. v. Darco Construction Corp.*, 217 S.W.3d 638, 653 (Tex. App.—Amarillo 2006, no pet.). In that case, the Amarillo Court of Appeals explained that "postjudgment interest is mandated by statute, and [that it] is recoverable even if the trial court's judgment does not mention it." That case, however, was a direct appeal from a judgment that did not include an award of postjudgment interest, and in that context, our sister court modified the trial court's judgment to include an award of postjudgment interest at the applicable rate. *Id*. In contrast, the question here is whether a trial court in a subsequent suit can modify final orders to include the award of postjudgment interest when the final orders are no longer subject to appeal and incorporate a MSA that does not provide for postjudgment interest. Coyle has not cited, and we have not found, authority that would support a trial court's authority to do so in this context. *See, e.g.*, *Maraio-Wilhoit*, 2021 Tex. App. LEXIS 888, at *10 (stating that "when entering judgment based on the parties' MSA, a trial court may not supply additional terms or otherwise

19

modify the agreement—the trial court's judgment must be rendered in strict compliance with the agreement's expressed terms and conditions" (citing *Milner v. Milner*, 361 S.W.3d 615, 618–19 (Tex. 2012), and *Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976))); *see also Milner*, 361 S.W.3d at 618–19 (explaining that parties are entitled to judgment that conforms with their agreement notwithstanding "another rule of law"). Here the MSA detailed that the judgment of $2,000 was "to be paid out in a period of thirty[-]six months" with monthly payments of $55.56, Walker and Flood each paying $27.70 monthly, with the first payments being due and payable on July 1, 2015, and the parties did not address or agree to the accrual of interest on the outstanding amount owed during the thirty-six month payment period.[11] We overrule Coyle's seventh issue.

**Casey's Cross-Appeal**

In two issues on cross-appeal, Casey asks this Court to vacate the portion of the final judgment ordering sanctions against him and render judgment in his favor. The final judgment incorporated the trial court's amended order regarding sanctions against Casey.

*Standard of Review and Applicable Law*

"We generally review a trial court's award of sanctions for an abuse of discretion." *Schlapper v. Forest*, No. 03-12-00702-CV, 2014 Tex. App. LEXIS 8213, at *10–11 (Tex. App.—Austin July 30, 2014, pet. denied) (mem. op.) (citing *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam)). "A trial court abuses its discretion if its ruling is arbitrary, unreasonable, or without reference to any guiding rules or legal

---

[11] The agreed payment plan supports that the parties' agreement was that $2,000 was the total amount required to be paid to satisfy the MSA without the accrual of interest—$27.70 x 36 months x 2 payors = $1,994.40, and $55.56 x 36 months = $2,000.16.

principles." *Id.* at *11 (citing *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam)). "A trial court abuses its discretion in imposing sanctions only if it bases its order on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Id.* (citing *Robson v. Gilbreath*, 267 S.W.3d 401, 405 (Tex. App.—Austin 2008, pet. denied), and *Monroe v. Grider*, 884 S.W.2d 811, 816 (Tex. App.—Dallas 1994, writ denied)).

Because the order here was based on both Rule 13 of the Texas Rules of Civil Procedure and Chapter 10 of the Texas Civil Practice and Remedies Code and tracks language from both provisions, we may review the order under the standard of either provision. *See* Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code §§ 10.001–.005; *Schlapper*, 2014 Tex. App. LEXIS 8213, at *11 (explaining that appellate court may review under standard of either provision cited in order for imposing sanctions); *see also Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007) (reviewing sanctions under Chapter 10 because trial court's written order specifically ordered penalty pursuant to Chapter 10); *American Flood Research*, 192 S.W.3d at 583–84 (where order imposing sanctions neither referred to nor tracked any language of specific rule, reviewing sanctions under rule that was cited in motion). If there is some evidence that supports the trial court's decision to sanction, the trial court has not abused its discretion. *Nath v. Texas Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014).

Under Rule 13, a trial court may sanction a party whose pleading is groundless and brought in bad faith or groundless and brought for purpose of harassment. *See* Tex. R. Civ. P. 13. "Groundless" means there is no basis in law or fact and the pleading is not warranted by a good faith argument for the extension, modification, or reversal of existing laws. *See id.* "Groundlessness turns on the legal merits of a claim." *Harrison v. Harrison*, 363 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2012, no pet.). In determining whether a claim is

21

groundless, a court "uses an objective standard" and looks to the facts available to the litigant and the circumstances at the time the pleading was filed. *Id.* (quoting *In re United Servs. Auto. Ass'n*, 76 S.W.3d 112, 116 (Tex. App.—San Antonio 2002, orig. proceeding)).

Under Chapter 10, a trial court may sanction a party or the party's attorney who signed a pleading or motion in violation of Section 10.001, which provides in relevant part:

> The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:
>
> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; [and]
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; . . .

Tex. Civ. Prac. & Rem. Code § 10.001(1), (2); *see id.* § 10.004(a) (authorizing court to sanction person who has signed pleading or motion in violation of Section 10.001). Guided by these standards, we turn to Casey's issues.

*Presumption of Good Faith*

In his first issue, Casey contends that the trial court abused its discretion when it sanctioned him because the trial court failed to analyze the presumption of good faith and Coyle's burden to overcome the presumption or to explain why or how the pleadings constituted bad faith. *See Low*, 221 S.W.3d at 614 (stating that courts generally "presume that pleadings and other papers are filed in good faith" and that "party seeking sanctions bears the burden of overcoming this presumption of good faith" (citing *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993))); *Langston v. Freese & Goss, PLLC*, No. 05-17-01140-CV,

22

2018 Tex. App. LEXIS 9871, at *11–12 (Tex. App.—Dallas Dec. 3, 2018, no pet.) (mem. op.) ("The party moving for sanctions bears the burden of overcoming a presumption that pleadings and other papers are filed in good faith." (citing *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (per curiam))).

In this case, the trial court sanctioned Casey based on his statements at the initial hearing concerning the identified suits or proceedings identified in his motion that supported declaring Coyle a vexatious litigant, his failure to apprise the trial court of binding precedent, and his refusal to withdraw his motion after Coyle retained counsel and moved for the court to reconsider the vexatious litigation motion. Casey's motion to declare Coyle a vexatious litigant was based on Section 11.054(1) of the Texas Civil Practice and Remedies Code, which requires the defendant to show that "there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and that:

> (1) the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained at least five litigations as a pro se litigant other than in a small claims court that have been:
>
> (A) finally determined adversely to the plaintiff;
>
> (B) permitted to remain pending at least two years without having been brought to trial or hearing; or
>
> (C) determined by a trial or appellate court to be frivolous or groundless under state or federal laws or rules of procedure; . . .

Tex. Civ. Prac. & Rem. Code § 11.054(1); *see Amir-Sharif v. Quick Trip Corp.*, 416 S.W.3d 914, 919 (Tex. App.—Dallas 2013, no pet.) (stating that burden is on party seeking vexatious litigant finding to establish elements under Section 11.054). During the initial hearing and in the motion, Casey represented to the trial court that the actions or proceedings by Coyle that were identified

23

in the motion were civil actions for purposes of the vexatious litigant statute.[12]  *See* Tex. Civ. Prac. & Rem. Code § 11.001(2) (defining litigation for purposes of vexatious litigant statute to mean "a civil action commenced, maintained, or pending in any state or federal court").  Copies of filings and other documents related to the "pro se actions" that Casey identified were attached to the motion and included a federal habeas petition, a Pennsylvania *praecipe* for a writ of summons, and a PCRA proceeding.  *See In re Casey*, 589 S.W.3d 850, 852 (Tex. 2019) (listing "pro se actions" that "Coyle had commenced, prosecuted, or maintained" in preceding seven-year period).

In Coyle's amended motion to reconsider the vexatious litigant motion, she contended that only two of the "suits" identified in the motion to declare her a vexatious litigant were "civil litigation" within the meaning of the vexatious litigant statute and provided argument and authority as to why the other identified actions or proceedings, including her federal habeas petition, did not constitute civil actions for purposes of the vexatious litigant statute.  For example, as support that her federal habeas petition did not constitute a civil action in this context, she cited and quoted *Aranda v. District Clerk*, 207 S.W.3d 785, 786 (Tex. Crim. App. 2006).

In its order sanctioning Casey, the trial court found good cause for sanctioning Casey because he made "several material misrepresentations" of law to the court,[13] failed to apprise the Court of binding authority, and refused to withdraw his motion after opposing

---

[12]  For example, during the initial hearing, Casey represented to the trial court that Coyle's pro se habeas petition "qualifies as a civil proceeding" and that Coyle's proceeding under Pennsylvania's Post Conviction Relief Act was "a civil proceeding."

[13]  The record reflects that after Coyle retained counsel, her attorney sought agreement from Casey as to the motion for reconsideration of the vexatious litigant determination, but Casey would not agree, and Coyle amended her motion to seek sanctions.

counsel provided authority showing that only two of the proceedings or actions that Casey had identified supported a vexatious litigant finding. In particular, the trial court found that Casey's statements were misrepresentations of law that Coyle's federal habeas petition, *praecipe* for a writ of summons, and PCRA proceeding were civil actions for purposes of the vexatious litigant statute. *See* Tex. Civ. Prac. & Rem. Code § 11.001(2). No party appealed the trial court's order reversing its initial ruling that Coyle was a vexatious litigant, and the trial court found that Casey's misrepresentations of law made a difference in the outcome of the court's initial ruling. Specifically, the trial court expressly stated in the amended order that had Casey fulfilled his obligations to properly inform the trial court of binding authority and not made the misrepresentations, the trial court would not have granted the vexatious litigant motion at the first hearing.

In the amended sanctions order, the trial court also provided specific explanations for its determinations as to each misrepresentation of law. Beginning with the PCRA proceeding, the trial court explained its reasoning for determining that such a proceeding is not a civil action for purposes of the vexatious litigant statute:

> [H]aving now reviewed the potential relief afforded by the Pennsylvania Post Conviction Relief Act, 42 Pa. C.S. § 9546, provided by Ms. Coyle, through counsel, there is no form of relief afforded by that statute that is a civil action, contrary to Plaintiff's assertions. This conclusion is bolstered by the organization of statute by the Pennsylvania Legislature, which chose to put the statute under Title 42 (Judiciary and Judicial Procedure), Part VIII (Criminal Proceedings). Mr. Casey's arguments that the Post Conviction Relief Act was a civil action was brought without any authority, which, made a difference in the outcome of the vexatious litigant finding initially entered by the Court.

As support for his position that the trial court erred when it concluded that this type of action does not constitute a civil action for purposes of the vexatious litigant statute,

25

Casey quotes the following sentence from an opinion by the Pennsylvania Supreme Court: "The PCRA system is not part of the criminal proceeding itself, but is, in fact, civil in nature." *See Commonwealth v. Haag*, 809 A.2d 271, 284 (Pa. 2002). Viewing this sentence in the context of the court's analysis and the statutory scheme, however, the trial court reasonably could have concluded that the Pennsylvania court was describing the nature of the statutory scheme itself and its purpose "to provide an action for a 'person convicted of crimes that they did not commit and persons serving illegal sentences' to obtain relief." *See id.* (citing 42 Pa. Cons. Stat. § 9543). A PCRA proceeding is the "sole means of obtaining collateral relief" from a conviction and "encompasses all other common law and statutory remedies for the same purpose . . . including habeas relief." 42 Pa. Cons. Stat. § 9542. And the available relief provided in the PCRA concerns convictions, authorizing courts to "issue supplemental orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence or other matters that are necessary and proper." *Id.* § 9546. For example, Coyle's PCRA petition sought relief from her sentence of probation for fifteen months from a 2011 criminal conviction, and the court dismissed the proceeding as moot after she became ineligible for relief under the PCRA because she "was no longer serving a sentence." *See Commonwealth v. Coyle*, No. 1486 MDA 2014, 2016 Pa. Super. Unpub. LEXIS 983, at *2 (Mar. 23, 2016). On this record, we cannot conclude that the trial court abused its discretion when it determined that Casey misrepresented that Coyle's PCRA proceeding was a civil action for purposes of the vexatious litigant statute. *See Schlapper*, 2014 Tex. App. LEXIS 8213, at *10–11.

The trial court similarly determined that Casey misrepresented that Coyle's federal habeas petition was a civil action for purposes of the vexatious litigant statute, explaining:

26

> The Court concludes that Mr. Casey misrepresented a habeas proceeding is a civil action because the Texas Court of Criminal Appeals has settled the matter that a writ of habeas corpus is not a civil action for purposes of the Texas vexatious litigant statute in *Aranda v. Dist[rict] Clerk*, 207 S.W.3d 785 (Tex. Crim. App. 2006) and has been followed by *Walp v. Williams*, 330 S.W.3d 404, 406 (Tex. App.—Fort Worth 2010, no pet.). Mr. Casey failed to apprise the Court of the binding authority in *Aranda*, which would have made a difference in the outcome of the vexatious litigant finding initially entered by the Court.

Coyle's federal habeas petition also was dismissed because the same fifteen-month sentence of probation had expired. *See Coyle v. Barry*, Civil No. 3:14-CV-1427, 2014 U.S. Dist. LEXIS 112314, at *3–4 (M.D. Pa. Aug. 13, 2014).

Casey asserts that the trial court's view of the law was erroneous because Coyle's federal habeas case was civil and should be used for purposes of the vexatious litigant statute. Casey relies on the style of a federal habeas action that includes "CV" and the applicability of the Federal Rules of Civil Procedure, and argues that the trial court's findings on *Aranda* "follow no guiding principles" because while "closely related," the opinion is "not directly adverse" to his position in that "it deals with a contrary sole proposition: whether a vexatious designation can prevent a district court from filing a habeas petition" and that the court was dealing with a Texas habeas petition, not a federal one. But the definition of "litigation" to mean a "civil action" in Section 11.001(2) applies throughout Chapter 11. *See* Tex. Civ. Prac. & Rem. Code §§ 11.001(2), .054 (requiring showing of "at least five litigations"), .101 (prohibiting filing of new "litigation"). And Casey does not explain why the reasoning by the court in *Aranda* should not apply to federal habeas proceedings when it applies to state habeas proceedings.

In determining that a writ of habeas corpus filed pursuant to article 11.07 of the Texas Code of Criminal Procedure is not "a civil action" for purposes of the vexatious litigant statute, the Texas Court of Criminal Appeals explained:

27

[W]hen a person is confined for violating a criminal statute and files an application for a writ of habeas corpus challenging his confinement, the proceeding is criminal, not civil, in nature.

*Aranda*, 207 S.W.3d at 786 (citing definition of "litigation" in Section 11.001(2)). In *Aranda*, the court determined that the prior vexatious finding against the litigant seeking a writ of habeas corpus did not authorize the district clerk to refuse the filing. *Id.* at 786–87; *see also Walp*, 330 S.W.3d at 406 (concluding that article 11.07 habeas proceeding is not civil action for purposes of finding inmate to be "vexatious litigant in the first place" and that application for habeas relief under federal law similarly is criminal in nature). Given that trial courts are bound to follow precedent from the Texas Court of Criminal Appeals, we cannot conclude that the trial court abused its discretion when it determined that Casey failed to apprise the trial court of *Aranda* and that he misrepresented that Coyle's federal habeas proceeding was a civil action for purposes of the vexatious litigant statute. *See Schlapper*, 2014 Tex. App. LEXIS 8213, at *10–11; *see also* Tex. Const. art. V, § 5 (stating that "Court of Criminal Appeals shall have final appealable jurisdiction . . . in all criminal cases" and "power to issue writ of habeas corpus").[14]

Casey also challenges the trial court's determination that he misrepresented that a *praecipe* for a writ of summons under Pennsylvania law is a civil action for purposes of the vexatious litigant statute. The trial court explained:

Regarding the misrepresentation that a writ of summons with *praecipe* is a civil action under Pennsylvania law, that procedure appears to be akin to a Rule 202

---

[14] To the extent that Casey argues that he was under no obligation to apprise the trial court of *Walp v. Williams*, 330 S.W.3d 404 (Tex. App.—Fort Worth 2010, no pet.), the trial court did not sanction him for not apprising him of that case. Although the trial court stated that the court in that case followed *Aranda*, the trial court's finding was that: "Mr. Casey failed to apprise the Court of the binding authority in *Aranda*, which would have made a difference in the outcome of the vexatious litigant finding initially entered by the Court."

28

petition under Texas law to seek pre-suit discovery. *See Lane v. CBS Broad., Inc.*, 2008 U.S. Dist. LEXIS 26906, 2008 WL 910000, *2–3 (E.D. Pa. 2008).

As support for his position that a *praecipe* for a writ of summons is a civil action under Pennsylvania law, Casey quotes language from *Katz v. Greig*, 339 A.2d 115, 117 (1975): "The law is clear that a writ of summons properly issued within the applicable statute of limitations validly commences an action." He also cites Pennsylvania Rule of Civil Procedure 1007, which states, "An action may be commenced by filing with the prothonotary: (1) a *praecipe* for a writ of summons" and distinguishes *Lane*, the case cited by the trial court to support its determination that this "procedure appears to be akin to a Rule 202 petition under Texas law to seek pre-suit discovery."

We, however, cannot conclude that the trial court abused its discretion by determining that Casey misrepresented that the writ of summons that Coyle filed was a civil action for purposes of the vexatious litigant statute. Under Pennsylvania law, the purpose of a *praecipe* for writ of summons is to set the date of commencement of an action for purposes of the statute of limitations without providing further information or requiring action by the named recipient of the writ. *See* Pa. R. Civ. P. 1351 (providing form for writ of summons); *Loftus v. Decker*, 289 A.3d 1093, 1099 (Pa. 2023) (explaining that "*praecipe* for writ of summons contains no statement of facts, claims, rights, or prayer for relief" and that "it states merely: 'You are hereby notified that [name(s) of plaintiff(s)] has (have) commenced an action against you,'" and that its purpose is to provide certainty as to determining whether statute of limitations has been tolled (quoting Pa. R. Civ. P. 1351)).

Further, in addition to expressly stating the misrepresentations of law that Casey had made, the trial court addressed and rejected Casey's claim that he had an

"'arguable basis' for his assertion that habeas corpus proceedings are civil in nature," finding that the case that Casey cited in support of that proposition "says exactly the opposite." *See* Tex. Civ. Prac. & Rem. Code § 10.001(2). Casey cited to *Goolsby v. Gonzales*, No. 1:11-CV-00394-LJO-GSA-PC, 2014 U.S. Dist. LEXIS 73819, at *8 (E.D. Cal. May 29, 2014), but the court in that case, when considering whether the plaintiff was a vexatious litigant under federal law, concluded that having a habeas petition denied did not demonstrate vexatiousness, *see id.* In the amended sanctions order, the trial court explained that Casey's citation to this case "further demonstrates that his initial position on the civil nature of habeas corpus as it relates to vexatious litigant findings was filed in bad faith and for the purpose of harassment." *See* Tex. Civ. Prac. & Rem. Code § 10.001(a); Tex. R. Civ. P. 13; *see also Elwell v. Mayfield*, No. 10-04-00322-CV, 2005 Tex. App. LEXIS 6356, at *19 (Tex. App.—Waco Aug. 10, 2005, pet. denied) (mem. op.) (observing that "[i]t has been held in cases construing Rule 13 that a party acts in bad faith if he has been put on notice that his claim may be groundless and he does not make reasonable inquiry before pursuing the claim further" (citing *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 668–69 (Tex. App.—Dallas 2003, no pet.))).

Based on the trial court's findings, we cannot conclude that the trial court failed to consider the presumption of good faith or Coyle's burden to overcome that presumption when it sanctioned Casey pursuant to Rule 13 and Chapter 10. Thus, we overrule Casey's first issue.

*Texas Disciplinary Rule of Professional Conduct 3.03(a)(4)*

In his second issue, Casey contends that the trial court abused its discretion in sanctioning him because "the trial court's standards neither referenced nor complied with Texas Disciplinary Rule of Professional Conduct 3.03(a)(4)," which provides:

A lawyer shall not knowingly: . . . fail to disclose to the tribunal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.

Tex. Dis. R. Prof. Cond. 3.03(a)(4). Casey argues that before a court can sanction based on a misrepresentation of case law, the court must identify the exact proposition of law—the authority—from a "controlling jurisdiction" that is "binding on that particular tribunal" and that is "directly adverse—states the opposite proposition of law." But Rule 3.03 also provides that a lawyer shall not knowingly "make a false statement of material fact or law to a tribunal," *id.* R. 3.03(a)(1), and that these duties "continue until remedial legal measures are no longer reasonably possible," *id.* R. 3.03(c). The trial court made express findings that Casey had made material misrepresentations of law to the trial court and that Casey refused to agree to withdraw his motion to declare Coyle a vexatious litigant after Coyle retained counsel and forwarded him the amended motion to reconsider and for sanctions. Given these findings and based on the plain language of Rule 3.03, even if we were to assume that a trial court cannot sanction an attorney for a misrepresentation of law unless he violates Rule 3.03, we cannot conclude that the trial court abused its discretion when it sanctioned Casey. We overrule his second issue.

## CONCLUSION

For these reasons, we affirm the trial court's final judgment.

31

_____

Rosa Lopez Theofanis, Justice

Before Justices Theofanis, Crump, and Ellis

Affirmed

Filed:   January 24, 2025